UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

OSCILLOSCOPE PICTURES, INC.,      )
      )
                 Plaintiff,    )    Case No.:17-cv-07458-MKB-ST
   v.      )
      )
DEAFUEH MONBO AND TAJE MONBO,    )
both individually and doing business as    )
12 O'CLOCK BOYZ,    )
      )
                 Defendants.    )

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DEAFUEH MONBO'S EMERGENCY MOTION TO VACATE CLERK'S ENTRY OF DEFAULT

MELONI & McCAFFREY
A Professional Corporation
Robert S. Meloni
Thomas P. McCaffrey
3 Columbus Circle, 15th Floor
New York, New York 10019

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

RELEVANT FACTS ................................................................................................... 3

THE PRESENT ACTION ........................................................................................... 8

    A.    Plaintiff Moves to Serve Defendants by Alternative Means ................................ 11

    B.    The Defendants' Default ............................................................................... 11

    C.    Defendant Deafueh Monbo's Motion to Vacate Clerk's Entry of Default .......... 13

ARGUMENT ............................................................................................................ 13

    I.    THE GOVERNING STANDARDS ................................................................ 13

    II.    MOTION TO SET ASIDE THE DEFAULT ................................................... 14

        A.  Defendant's Conduct Was Willful ............................................................ 15

        B.  There Are No Meritorious Defenses ......................................................... 16

            (1) Defendants Were Properly Served ...................................................... 16

                (a) Defendant Maintains the Burden of
                      Establishing Insufficient Service ...................................................... 16

                (b)  Defendant Cannot Establish Insufficient Service ............................ 17

            (2)  Personal Jurisdiction ......................................................................... 18

                (a)  Defendant Must Establish Lack of Personal Jurisdiction ................. 18

                (b)  The Court Only Requires a Prima Facie Showing of
                      Personal Jurisdiction .................................................................... 18

            (c)  The Court Has Personal Jurisdiction over Defendants ........................... 20

                (i) The Court Has Specific Jurisdiction under CPLR 302(a) (3)(ii)……...21

                (ii) There Are No Due Process Concerns…………………………………..26

            (3) Failure to Join 12 O'Clock Boyz Sports, Inc. …………………………26

        C.  Prejudice…………………………………………………………………..29

CONCLUSION ........................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                              <u>Pages</u>

*Banker v. Esperanza Health Sys., Ltd., ,*
    201 F. App'x 13 (2d Cir. 2006) ............................................................................19

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
    902 F.2d 194 (2d Cir. 1990).................................................................................18

*Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez,*
    305 F3d 120 (2d Cir 2002).....................................................................................22

*Brown v. Gabbidon*,
    No. 06 CV 8148, 2007 U.S. Dist. LEXIS 35134 (S.D.N.Y. May 14, 2007) .............14, 29

*Burda Media, Inc. v. Viertel*,
    417 F.3d 292 (2d Cir. 2005).............................................................................18 n.12

*Cerchia v. VA. Mesa, Inc.,*
    191 A.D.2d 377, 595 N.Y.S.2d 212 (1st Dept. 1993)................................................25 n.15

*City of New York v. A-1 Jewelry & Pawn, Inc.*
    247 F.R.D. 296, 330 (E.D.N.Y. 2007) .................................................................. 22 n.13

*Clarke v. County of Broome,*
    1:10-CV-399 (MAD/ATB), 2012 U.S. Dist. LEXIS 40318
    (N.D.N.Y. March 23, 2012)....................................................................................28

*Clifton v. Tomb,*
    21 F.2d 893, 897 (4th Cir.1927) ............................................................................13

*Chatwal Hotels & Resorts LLC v. Dollywood Co.,*
    90 F. Supp. 3d 97 (S.D.N.Y. 2015).......................................................................24 n.14

*Cohen v. Murphy,*
    C 03-05793 HRL, 2004 U.S. Dist. LEXIS 25284 (N.D. Cal. 2004) ........................14

*Coll. Essay Optimizer, LLC v. Edswell, Inc.,*
    14-cv-8586 (LAK), 2015 U.S. Dist. LEXIS 133488 (S.D.N.Y. Sept. 30, 2015) ......20

*CSC Holdings, Inc. v. Fung,*
    349 F. Supp. 2d 613 (E.D.N.Y. 2004) ...................................................................16

*Daimler AG v. Bauman,,*
      134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ...............................................20

*DiStefano v. Carozzi N. Am., Inc.,*
      286 F.3d 81 (2d Cir. 2001) ...................................................................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,*
      722 F.3d 81 (2d Cir. 2013)...............................................................18, 19

*Egleston v. Valspar Corp.,*
      15cv4130 (DLC), 2015 U.S. Dist. LEXIS 146284 (S.D.N.Y. Oct. 13, 2015)..........29 n.16

*Ehrenfeld v. Mahfouz,,*
      489 F.3d 542 (2d Cir. 2007) ...........................................................22 n.13

*Energy Brands, Inc. v. Spiritual Brands, Inc.,*
      571 F. Supp. 2d 458 (S.D.N.Y. 2008)........................................................26

*Enron Oil Corp. v. Diakuhara,*
      10 F.3d 90 (2d Cir. 1993) .............................................................16, 29

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.,*
      CV-08-384, 2009 U.S. Dist. LEXIS 13369 (E.D.N.Y. Feb. 17, 2009) ..................26

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
      564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)........................................20

*Great Am. Ins. Co. v. M.J. Menefee Constr., Inc.,,*
      No. CV F06-0392 AWI DLB, 2006 U.S. Dist. LEXIS 64902
      (E.D. Cal. Aug. 29, 2006) .....................................................................14

*Hanson v. Denckla,*
      357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958) ..........................................20

*Hartford Fire Ins. Co. v. Sunteck Transp. Group, Inc.,*
      No. 2:10cv191, 2011 U.S. Dist. LEXIS 78137 (E.D. Va. June 29, 2011)................13

*Holey Soles Holdings, Ltd. v. Foam Creations, Inc.,*
      05 Civ. 6893 (MBM), 2006 U.S. Dist. LEXIS 25880 (S.D.N.Y. May 2, 2006) .......25 n.15

*Innovative Sports Mgmt., Inc. v. Redzic,*
      2013 U.S. Dist. LEXIS 125358 (D. Az. Sept. 3, 2013)  ...........................................13

*In re Uranium Antitrust Litigation,*
      473 F. Supp. 382 (D.C. Ill.1979)) ............................................................14

*Jarolim v. Akris Inc,*
  14 Civ. 3361 (AT), 2015 U.S. Dist. LEXIS 136400 (S.D.N.Y. Sept. 9, 2015) ........19

*K.C.P.L., Inc. v. Nash,*
  No. 98 Civ. 3773, 1998 WL 823657 (S.D.N.Y. 1998) .............................................21

*LaMarca v. Pak-Mor Mfg. Co.,*
  95 N.Y.2d 210, 713 N.Y.S.2d 304, 308 (2000) ........................................................26

*McGowan v. Smith,*
  52 N.Y.2d 268, 437 N.Y.S. 2d 643 (1981) ...............................................................22

*Moll v. Telesector Res. Grp., Inc.,*
  760 F.3d 198, 205 (2d Cir. 2014) ........................................................................29 n.16

*Mulhern v. Eastman Kodak Co.,*
  191 F.Supp.2d 326 (W.D.N.Y. 2002) ........................................................................29

*Newhouse v. Probert,*
  608 F. Supp. 978 (D.C. Mich. 1985) .........................................................................14

*Oddo Asset Mgt. v Barclays Bank PLC,*
  36 Misc.3d 1205[A], 954 N.Y.S.2d 760 (Sup. Ct. N.Y. Co. Apr. 21, 2010) ............22

*PDK Labs, Inc. v. Friedlander,*
  *103 F.3d 1105, 1108 (2d Cir. 1997)* .........................................................................22

*Pecarsky v. Galaxiworld.com, Ltd.,*
  249 F.3d 167 (2d Cir. 2001) .....................................................................................15

*Penguin Grp. (USA), Inc. v. Am. Buddha,*
  609 F.3d 30, 34-35 (2d Cir.), *certified question accepted,*
  15 N.Y.3d 744, 906 N.Y.S.2d 807 (N.Y. 2010) *and certified*
  *question answered*, 16 N.Y.3d 295, 921 N.Y.S.2d 171 (2011) ................................19

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
  16 N.Y.3d 295, 921 N.Y.S.2d 171 (2011) ................................................................21

*Peterson v. Spartan Industries, Inc.,*
  33 N.Y.2d 463, 354 N.Y.S.2d 905 (1974) ............................................................25 n.15

*Proforma Partners v Skadden Arps Slate Meagher & Flom,,*
  280 A.D.2d 303, 720 N.Y.S.2d 139 (1st Dep't 2001) ...............................................22

*RLS Associates. LLC. v. United Bank of Kuwait PLC*
  No. 01 CIV 1290, 2002 U.S. Dist. LEXIS 1371 (S.D.N.Y. Jan. 29, 2002) ..............30

*Rohm & Haas Co. v. Aries*,
    103 F.R.D. 541 (S.D.N.Y. 1984) ............................................................................18 n.12

*Sartor v. Utica Taxi Ctr., Inc.*,
    *260 F. Supp. 2d 670 (S.D.N.Y. 2003)* ....................................................................*16, 18*

*SEC v. McNulty*,
    137 F.3d 732 (2d Cir. 1998) .................................................................................15, 30

*Secrest v. Merck, Sharp & Dohme Corp. (In re Fosamax Prods. Liab. Litig.)*,
    707 F.3d 189, 193 (2d Cir. 2013) ........................................................................29 n.16

*S. New Eng. Tel. Co. v. Glob. NAPs Inc*,
    624 F.3d 123 (2d Cir. 2010) ......................................................................................19

*Sole Resort, S.A. de C.V. v Allure Resorts Mgt., LLC*,
    450 F3d 100 (2d Cir 2006) .........................................................................................22

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ......................................................................................20

*Staples, Inc. v. W.J.R. Assocs.*,
    *04 CV 0904 (SJ), 2005 U.S. Dist. LEXIS 7219 (E.D.N.Y. Apr. 7, 2005)* ..................*15*

*Starmedia Network, Inc. v. Star Media, Inc.*,
    No. 00 Civ. 4647, 2001 U.S. Dist. LEXIS 4870
    (S.D.N.Y. Apr. 23, 2001) ....................................................................................24 n.14

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada.*,
    374 F.3d 158 (2d Cir. 2004) ......................................................................................16

*Traflex International, Inc. v. Jasmin, Ltd.*,
    No. 88 Civ. 3557 (JFK), 1989 U.S. Dist. LEXIS 6784
    (S.D.N.Y June 19, 1989) .............................................................................................26

*Transamerica Life Ins. Co. v. Shubin*,
    1:11-cv-01958-LJO-SKO, 2012 U.S. Dist. LEXIS 157131
    (E.D. Cal.  Oct. 31, 2012) ..........................................................................................13

*United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.*,
    755 F. Supp. 1195 (S.D.N.Y. 1989) ...........................................................................15

*United States v. Bullen*,
    No. 97 CV 7322, 1999 U.S. Dist. LEXIS 24015 (E.D.N.Y. Mar, 1, 1999) ..............15

*U.S. Commodity Futures Trading Comm'n v. Wilson,*
    27 F. Supp. 3d 517 (S.D.N.Y. 2014).........................................................................19

*Velez v. Vassallo,*
    203 F. Supp. 2d 312 (S.D.N.Y. 2002).............................................................16, 18

*Weifang Xinli Plastic Prods. Co. v. JBM Trading Inc.,*
    11 CV 2710 (WFK)(LB),. 2014 U.S. Dist. LEXIS 119391
    (E.D.N.Y. May 2, 2014) .......................................................................................15

*Whitaker v. Am. Telecasting, Inc.,*
    261 F.3d 196 (2d Cir. 2001)...................................................................................19

*Yan v. Bocar,*
    04 Civ. 4194, 2005 U.S. Dist. LEXIS 28390 (S.D.N.Y. Sept. 8, 2005)...................18

*Zippo Mfg. Co. v. Zippo Dot Com,*
    952 F. Supp. 1119 (W.D. Pa. 1997) ......................................................................21

## **Statutes**

C.P.L.R. §302 (a)(3) ........................................................................21, 22, 25, 26

Fed. R. Civ. P. §55 (a) ..............................................................................14

Fed. R. Civ. P. §55 (c) ..............................................................................14

## PRELIMINARY STATEMENT[1]

Plaintiff Oscilloscope Pictures, Inc. (hereafter "Plaintiff") submits this memorandum of law in opposition to Defendant Deafueh Monbo's (hereafter "Defendant") Emergency Motion to Vacate Clerk's Entry of Default for Lack of Personal Jurisdiction and Insufficiency of Service of Process and Failure to Join a Party [Docket Entry (hereinafter "DE") 20 & 20-1. (hereinafter "Motion to Vacate).[2]

Those facts establish that for all relevant times, Plaintiff has been a New York corporation, with offices located at 140 Havemeyer Street, Brooklyn, New York 11211.  *See* Sladek Dec., ¶4

The facts establish that Defendants Deafueh and Taje Monbo were properly served with legal process pursuant to this Court's Order dated March 13, 2018, issued by the Honorable Steven L. Tiscione, which, *inter alia*, authorized Plaintiff to serve Defendants by the alternative means of (1) email; (2) Twitter; and (3) first class mail to Defendant's last known residential address, last known business address and business Post Office Box.  *See* DE-13.   As a result, Defendant's argument that there was insufficiency of service of process is an epic failure. *See* DE-11, 13 & 15.

The facts establish that Defendants Deafueh and Taje Monbo, acting individually while doing business as "12 O'Clock Boyz The Official 12 O'Clock Boyz," sent over a dozen "take-down" notices and other correspondence to a number of  Plaintiff's domestic and international film licensees and distributors, including, without limitation, SONY, Amazon, Vimeo, Google, YouTube, InDemand, Netflix, Transmission Films and Fandor.  Two of those distributors, Vimeo (VHX Corporation) and InDemand, are based in New York.  Those contacts improperly threatened

---

[1]   This memorandum of law is accompanied by the Declaration of Robert S. Meloni dated May 16, 2018 (hereafter "Meloni Dec."), the Declaration of Thomas J. Sladek dated May 16, 2018 (hereafter "Sladek Dec."), and also refers to previously filed pleadings and affidavits with respect thereto.

[2] Defendant also filed a Motion to Dismiss (DE 19) on April 30, 2018.  Plaintiff shall refer to it herein as Defendant's "Motion to Dismiss".  The "Motion to Vacate" and "Motion to Dismiss" will be collectively referred to herein as "Defendant's Motions."

those licensees and distributors with legal action for copyright and/or trademark infringement. *See* Sladek Dec., ¶¶7-8.

The facts establish that Defendants sent at least one of Plaintiff's New York based licensees, VHX Corporation (a subsidiary of distributor Vimeo, LLC) two takedown notices under the Digital Millennium Copyright Act, 17 U.S.C. 17 U.S.C. §512 ("DMCA") on November 22, 2017 and November 29, 2017, and also a letter dated November 19, 2017 to VHX which asserted trademark violations against VHX for their use of the title *12 O'Clock Boys* in connection with VHX's publication on their New York-based server of that film.

The facts establish that after VHX responded in writing to Defendants, they sent a follow-up letter which threatened litigation against VHX and Plaintiff for their purported continued infringements. As a result, VHX invoked its rights to indemnification by Plaintiff, causing Plaintiff to suffer professional embarrassment over the cloud on the title to this film. *See* Meloni Dec., ¶¶9-15; Sladek Dec., ¶11

The facts establish that Defendants' dissemination of the improper takedown notices to Plaintiff's other Licensees also caused damages to Plaintiff in New York, either from the removal of Plaintiff's film from distribution and/or the invocation of Plaintiff's obligation to indemnify those Licensees. This not only caused Plaintiff to lose income in New York but also raised a cloud over Plaintiff's title to its film, caused Plaintiff professional embarrassment, and damaged its professional reputation, all of which occurred in New York. Finally, it caused Plaintiff to incur substantial legal fees relating not only to this litigation, but its attorney's efforts to address the concerns of its Licensees raised by Defendants' improper conduct. Sladek Dec. ¶¶11-15

The facts establish that Defendants represented, in their numerous letters to Plaintiff's Licensees, that their "12 O'CLOCK BOYZ" brand has been in existence as early as 2001 and since

that time has been both a *worldwide pioneer and leader in the field of urban dirt-bike riding*." (italics added).  Indeed, Defendants swore under oath pursuant to 18 U.S.C. §1001 in their federal application for registration of their trademarks that they began using the Mark "12 O'Clock Boyz" in interstate commerce as of June 25, 2001.  Moreover, Defendants represented to their Twitter followers that they protected their rights to their intellectual property on a national and international level by sending takedown notices to Plaintiff's "Partners and Sub-partners. . . in the United States, Australia, France and South Africa"  knowing that it would directly impact Plaintiff in New York. Meloni Dec. ¶21 and Ex. A and Ex. H.  Thus, they have conceded, at least on a *prima facie* basis, that they derived substantial revenue from interstate or international commerce beginning in 2001 and that the Court has personal jurisdiction over Defendants under New York's Long-Arm Statute.

The facts also establish that Defendants represented in their takedown notices that they were the individual owners of the purportedly infringed trademarks and copyrights and thus, the rights of any non-party to this action will not be negatively impacted by the judgment of this Court for the relief sought by Plaintiff.  Thus, no joinder of non-parties is required for a full resolution of this case. Meloni Dec. ¶¶10-11, 24.

## **RELEVANT FACTS**

Plaintiff became the exclusive worldwide distributor of the documentary *12 O'Clock Boys* (the "Documentary") in 2013.   DE-1, ¶36.   Plaintiff immediately began distributing the Documentary through various Licensees both within the United States and internationally, including SONY, Amazon, Vimeo, Google, YouTube, InDemand, Netflix, Transmission Films and Fandor. Plaintiff has continued to exploit the Documentary in interstate commerce under that title to the present date. *Id*., ¶37.

Between November 11, 2017 and December 17, 2017, the Defendants sent over a dozen takedown notices (the "Notices") by email from the email address "Deemonbo@yahoo.com" to Plaintiff's Licensees relating to the Documentary, including to Transmission Films, Sony, Vimeo, Baker & Taylor (Target), Chassy Media, YouTube, Google, Beamafilm, Towson University Library, InDemand, Amazon, Fandor, YouTube and Netflix.  *Id.* ¶39; DE-11-1, ¶5.  The Notices alleged purported ownership of a home video that was excerpted in the Documentary and resulting violations of federal Trademark and Copyright laws, including, without limitation, the Digital Millennium Copyright Act ("DMCA"), and threatened litigation. DE-1, ¶¶40-41, 47-48; DE-11-1*,* ¶6.  Indeed, when applying for the Trademark Registrations, Defendants represented, under oath pursuant under 18 U.S.C. §1001, that they began using the Mark "12 O'CLOCK BOYZ" in interstate commerce as of June 25, 2001 in three classes of goods/services (Classes 9, 25 and 41), including through the sale of the Home Video.  DE-1, ¶43.   In response to the receipt of these Notices, the Licensees invoked their right to seek indemnification from Plaintiff and a number of them have removed the Documentary from distribution, causing Plaintiff financial and reputational damage where they are located in New York. DE-1, ¶¶52-53.

In the Notices, the Defendants list their contact information as follows:

12 O'Clock Boyz
Attention:  Deafueh Monbo
P.O. Box 135
Owing Mills, Maryland 21117
Email:  Deemonbo@yahoo.com
Phone: (410) 656-9040

DE-11-1, ¶7 and Ex. A.

One series of Notices and follow-up written exchanges, were sent by Defendants to Plaintiff's Licensee VHX Corporation, which is based in New York City. *See* Meloni Dec., ¶¶10-20, Exs. A, B & C.

The original contact by Defendants with New York was dated November 19, 2017, and was addressed to: "VHX Corporation, 555 West 18th Street, New York, New York 10011; Attn:  Legal Department." *Id*., ¶9, Ex. A.

The correspondence opened as follows: "Taje Monbo and Deafueh Monbo d/b/a 12 O'Clock Boyz own the trademarks in the motion picture and brand name entitled 12 O'CLOCK BOYZ." *Id.*  A few paragraphs later Defendants asserted: "The 12 O'CLOCK BOYZ brand has been in existence **as early as 2001** and has been both a **worldwide pioneer and leader in the field of urban dirt-bike riding."** *Id.* (bold in original).

After explaining their awareness that Plaintiff is the distributor of the film entitled "12 O'Clock Boys," Defendants then assert "12 O'Clock Boyz further understand that the trademark infringing film is being offered for sale on the VHX.TV website."  *Id.*

Defendants then state as follows: "**This letter constitutes 12 O'Clock Boyz demand that VHX.TV remove any, and all infringing content bearing the 12 O'CLOCK BOYZ mark from the VHX.TV website.**" *Id*.  (bold in original).

Defendants then conclude their correspondence as follows: "If VHX.TV or its attorney have any questions regarding this letter, please do not hesitate to contact me by telephone at (410) 207-0242 or by postal mail at:

> **12 O'Clock Boyz**
> Attention: Deafueh Monbo
> P.O. Box 135 Owings Mills, Maryland 21117
> Email: deemonbo@yahoo.com
> Phone: (410) 656-9040"

*Id.* (bold in original).[3]

---

[3] Indeed, Exhibit 1 to the November 19, 2017 letter to VHX lists the "individual[s]" Deafueh and Taje Monbo as the Owners of the three representative trademarks in 12 O'Clock Boyz and that their address is "PO Box 135 Owings Mills MARYLAND 21117".  *See* Meloni Dec., Ex. A (Exhibit 1 to VHX Notice).

Defendants then sent two DMCA Notices to VHX Corporation on November 22, 2017 and November 29, 2017.

On December 13, 2017, Michael A, Cheah, Vimeo, Inc.'s General Counsel sent a letter to Deafueh Monbo at his listed email account (deemonbo@yahoo.com)addressed to: "P.O. Box 135, Owing Mills, Maryland 21117".  *See* Meloni Dec., ¶16, Ex. B.

Mr. Cheah stated that he was "responding to the notices that you submitted to Vimeo, dated November 19, 21, and 29".  *Id.*   Mr. Cheah then stated that "*You also claim that the "brand," 12 O'CLOCK BOYZ, "has been in existence as early as 2001 and has been both a worldwide pioneer and leader in the field of urban dirt-bike riding*" (Nov. 19 letter at p. 1), and that your 2001 film "*is a legendary motion picture*" (Nov. 22 letter at p. 1)."  It then refers to Plaintiff's counsel's written response to Defendants' claims and states:

> "We shared Oscilloscope's November 21 letter with you and asked you for a response.  To date, you have not responded to Oscilloscope's assertions.  Instead, you provided a "third" takedown notice, which merely repeated the assertions from your earlier letters and attached materials previously attached to your earlier letters. Because the allegations made by Oscilloscope are serious ones that question your good faith, we would have expected a substantive response from you.  Your failure to respond is troubling, to say the least."

*Id.*  Mr. Cheah then responded that, based on these factors, Vimeo [VHX] declined to remove *12 O'Clock Boys* from their platform.  *Id.*

Defendants responded to Mr. Cheah that same day.  *See* Meloni Dec., ¶19, Ex. C.[4]

Citing VHX's refusal to comply with Defendants' DMCA takedown notice, Defendants threatened VHX as follows:

> 12 O'Clock Boyz can sue **both** VHX Corporation along with Oscilloscope for copyright infringement in the U.S. Federal Court.  The remedies available to 12

---

[4] Their December 13, 2017 letter to VHX opens with "This Letter is sent in response to the VHX Corporation letter dated December 13, 2017" which confirms that Defendants could only have received the VHX letter that quickly at the Defendants' listed email address: Deemonbo@yahoo.com.

6

O'Clock Boyz for these copyright infringements **include actual damages and any additional profits made by VHX Corporation or statutory damages up to $150,000 as well as injunctive relief, attorneys' fees and costs.**"

*Id.* (bold in original).

VHX then invoked its rights to indemnity pursuant to its agreement with Plaintiff. *See* Sladek Dec., ¶ 11.

Another Notice was sent by Defendants to InDemand, LLC, one of Plaintiff's other New York-based Licensees. *See* Sladek Dec., ¶11. On December 4, 2017, Plaintiff received correspondence from InDemand's principal office located at 345 Hudson Street, 17th Floor, New York, NY 10014, which enclosed Defendants' November 18, 2017 letter to InDemand's Parent Company. *Id.,* Ex. A.[5]

InDemand's cover letter to Plaintiff refers to InDemand's February 7, 2011 agreement with Plaintiff, makes reference to Defendants' enclosed letter, and then states: "*Pursuant to Section 8 of the Agreement, this letter shall serve as notice of a claim for which INDEMAND seeks indemnification for itself and the Licensee indemnified Parties, pursuant to [Plaintiff's] obligations arising under Section 8(a).*" *See* Sladek Dec., Ex. A.  The letter closes by imposing the obligation on Plaintiff to respond to Defendants' trademark letter. *Id.*

On December 14, 2017, Robert S. Meloni, counsel for Plaintiff, sent Defendants a letter which contested in detail all claims asserted in the Notices based on the existence of, and their purported ownership in, both a protectable federal trademark in the mark "12 O'CLOCK BOYZ", and their exclusive rights in the copyright in the Home Video, and challenged the factual and legal sufficiency of those claims. *See* Meloni Dec., ¶ 22, Ex. D.

---

[5] Defendants' November 18, 2017 letter is substantively the same as the November 19th Notice to VHX, including the same allegations concerning the Defendants' individual ownership of those rights and the same worldwide exploitation of those rights by Defendants doing business as 12 O'Clock Boyz since 2001. *Compare* Sladek Dec., Ex. A. *with* Meloni Dec., Ex. A.  Defendants also invite a response from InDemand and lists the same email and P.O. Box used in Defendants' November 19th Notice sent to VHX. *See* Sladek Dec., Ex. A.

Mr. Meloni's letter demanded that Defendants cease and refrain from all future interfering activity. The letter was delivered by U.S. mail to Defendants' P.O. Box with a copy electronically delivered to Defendants listed email address, Deemonbo@yahoo.com.   DE-11-1, ¶8, and Ex. B. The email and hard copy of the letter were not returned as "undeliverable".  *Id.* ¶9.   Defendants ignored said letter and continued to send out at least one more Notice.  *Id.,* ¶10.  Defendants refused to engage or communicate with Plaintiff or its counsel at any time, other than through its interference with Plaintiff's agreements with its Licensees.  *Id.,* ¶11.

In each instance, Defendants' intentional interference with Plaintiff's exploitation of the Documentary *12 O'Clock Boys* resulted in injury to Plaintiff in New York by its removal from distribution and the loss of licensing revenue, and/or the invocation of its Licensees' indemnification rights. In every case, a cloud on Plaintiff's title to those rights, and professional embarrassment in its industry.  *See* Sladek Dec., ¶¶11-13.

## THE PRESENT ACTION

Plaintiff filed this action on December 22, 2017, seeking declaratory and injunctive relief, and damages.  DE-11-1, ¶12.  On January 2, 2018, Plaintiff's counsel sent courtesy copies of the Summons and Complaint (the "Pleadings") with a Rule 4 Notice and Waiver to both Deafueh Monbo and Taj Monbo by: (1) Federal Express to Defendant Deafueh Monbo's business address at 10451 Mill Run Circle, Suite 400, Owing Mills, Maryland 21117, (2) email to the email address listed on the Notices: deemonbo@yahoo.com; and (3) by Express Mail c/o 12 O'Clock Boyz at the P.O. Box 135, Owing Mills, Maryland 21117, the P.O. Box listed in the Notices.  *Id.,* ¶13. and Ex. C.  Both the Mill Run Circle and P.O. Box are valid addresses used by Defendants, so none of the three methods of delivery were returned to Plaintiff's counsel as "undeliverable".  *Id.,* ¶14.

Indeed, during the first sixty days following the filing of this action, the following attempts at physical service of the Pleadings on both Deafueh and Taj Monbo by Monumental Process Servers of Baltimore, Maryland occurred:[6]

1. On 01/12/2018 at 12:18 PM, service attempt on Deafueh Monbo at 400 E. Pratt Street, Suite 800, Baltimore, MD 21202. The process server spoke to an employee who advised that Deafueh Monbo is unknown at the given address.

2. On 1/18/2018 at 2:19 PM, service attempted on Deafueh Monbo at 10451 Mill Run Circle, Suite Owings Mills, MD, a shared office space. Process server spoke to "Jeannie" who stated she has been told that she cannot accept any service for Deafueh Monbo as she does not work for his office. That she stated her company has no way of reaching WP Tax Group.

3. On 1/29/2018 at 2:28 PM, service attempted at Deafueh Monbo's office located at: c/o WP Tax Group, 10451 Mill Run Circle, Suite Owings Mills, MD.  Process server served Whitney Flanagan, Receptionist.

4. On 2/26/2018 at 5:35 PM, service was attempted on Taje Monbo at a residence address, (1) 8808 Selina Road, Randallstown, MD 21133; and (2) 65 Fennington Circle, Owings Mills, MD  21117. Process servicer reported that she received no response to her knocking on the door. That the residence was dark and there were no neighbors home to try and verify the address.

DE-11-1, ¶15 and Ex. D.

On January 29, 2018, Defendants irrefutably demonstrated that they had received the pleadings when they tweeted on the 12 O'Clock Boyz Twitter Account as follows:

Real 12 O'Clock Boyz
@12OClockBoyz_
Jan 29
More
"In an attempt to save face, Oscilloscope files lawsuit BEGGING the Judge to decide whether in fact Copycat filmmakers IMPOSTERED 12 O'Clock Boys(2001). YEAH YEAH, THROW YOUR LAWSUIT ON THE GRASS AND LEAVE IT THERE. http://bit.ly/2njQklA***#12OClockBoys #12OClockBoyz"

---

[6] The addresses listed here were discovered as a result of background and public record searches of both defendants performed by Intellius on January 5, 2018 (Deafueh) and on December 14, 2017 by Courtrecords.org (Taje), at the request of Robert Meloni. See Meloni Dec. ¶31, n.1.  Copies of those reports are attached to the Meloni Dec. as Exhibit J.

DE-11-1, ¶16 and Ex. E. (https://twitter.com/12oclockboyz_?lang=en). Moreover, the Defendants were thumbing their noses at the Plaintiff, the Court and the judicial system.

When visitors to the 12 O'Clock Boyz Twitter Account click on the embedded URL http://bit.ly/2njQklA they are taken to the Court Listener web page, which has a copy of the Complaint in this action posted on their website.   DE-11-1, ¶17 and Ex. F. (https://www.courtlistener.com/docket/6247722/1/oscilloscope-pictures-inc-v-monbo/).

On January 31, 2018, Defendants posted another tweet referencing this Action as follows:

"Look here boy, when the Official 12 O'Clock Boyz team come to Court, it's not to play with these Copycat filmmakers.  It's to shoot at these Copycats like movie directors.  🎥✍️▢Below is the list of POSSIBLE WITNESSES that the #12OClockBoys lawsuit could include. #ThePreview



8:21 AM - 31 Jan 2018.  DE-11-1, ¶18 and Ex. G.

These two Twitter Account entries make it absolutely clear that the Defendants were fully aware of this action and the claims asserted.   Nonetheless, Defendants failed to respond to the pleadings either through filings with the Court or by direct contact with Plaintiff's counsel.  DE-11-1, ¶19.  Instead, they lauded the damages they had inflicted upon Plaintiff with Tweets like the following:

Real 12 O'Clock Boyz
@12OClockBoyz_
 12 Dec 2017

More Real 12 O'Clock Boyz Retweeted Jorge Luis Lopez Esq

Like Bey, the Official 12 O'ClockBoyz team slaps Partners and Sub-partners of @OscopeLabs in the United States, Australia, France and South Africa with Copyright Takedown Notices for IMPOSTERING the Original #12OClockBoys(2001) and for Oscilloscope's FAILURE TO PROVIDE 💰RECEIPTS.

DE-11-1, ¶20 and Ex. H.

### A.  **Plaintiff Moves to Serve Defendants by Alternative Means.**

Just over 60 days following the commencement of this action, in an effort to avoid this type of motion, on March 5, 2018, Plaintiff moved this Court to extend the time to complete service of the pleadings and sought leave to serve the Defendants by alternative methods of service.  DE- 11, DE-11-1 and DE-11-2.

By order of Magistrate Judge Steven L. Tiscione, dated March 13, 2018, this Court granted Plaintiff's motion and "authorized [Plaintiff] to serve defendants by email; Twitter; and first class mail to Defendants' last known residential address, last known business address and business Post Office Box" insofar as such methods were demonstrated to be "*reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present the objections*". DE-13 (italics added).

### B.  **The Defendants' Default.**

On March 16, 2018, Plaintiff served the Defendants with true and correct copies of the Summons and  Complaint, Civil Cover Sheet, the Report on Filing of Copyright Action and the Individual Rules & Practices of Judge Margo K. Brodie (the "Service Documents"), by email transmission to the email address deemonbo@yahoo.com.  *See* DE-15.

On March 19, 2018,  Plaintiff also served Defendants true and correct copies of the Service Documents by messaging a DropBox download link (which redirected them to a folder containing the Service Documents) at the following Twitter account: Real 12 O'Clock Boyz: @12OClockBoyz.  *See* DE-15.

On March 19, 2018, Plaintiff also served Defendants true and correct copies of the Service Documents at the Defendants' last known residential and business addresses[7], and business Post Office Box, as follows:

| | |
|---|---|
| Taje Monbo | 10451 Mill Run Circle, Ste. 400 Owings Mills, Maryland 21117 |
| Taje Monbo | P.O. Box 135 Owings Mills, Maryland 21117 |
| Taje Monbo | 65 Fennington Circle, Owings Mills, Maryland 21117 |
| Deafueh Monbo | 10451 Mill Run Circle, Ste. 400 Owings Mills, Maryland 21117 |
| Deafueh Monbo | P.O. Box 135 Owings Mills, Maryland 21117 |
| Deafueh Monbo | 65 Fennington Circle Owings Mills, Maryland 21117 |

DE-15 (Certificate of Service dated 4/30/2018 [DE-17]).[8]

On April 24, 2018, Plaintiff's counsel filed a Declaration In Support of Request for Clerk's Certificate of Default.   See DE-16.  In said application, Plaintiff's counsel recounted the aforementioned facts regarding the execution of the Court's approved methods of service upon Defendants.   *Id.*   On April 30, 2018, the Clerk of the Eastern District of New York filed a Certificate of Default against Defendants.  *See* DE-18.

---

[7] The 65 Fennington Circle and 10451 Mill Run Circle addresses were found in the background reports commissioned by Robert Meloni. *See* n. 6, *infra*.

[8] Two earlier certificates of service were filed with the Clerk on March 27, 2018, each of which contained inadvertent errors in the years stated for the dates of service. *See* DE-15 and DE-16.  These were corrected in the April 30, 2018 filing. *See* Meloni Dec., ¶31, n. 2.

**C. <u>Defendant Deafueh Monbo's Motion to Vacate Clerk's Entry of Default</u>.**[9]

On May 2, 2018, Defendant Deafueh Monbo filed his Motion to Vacate, solely as to himself, based upon the following arguments: (1) Lack of Personal Jurisdiction and (2) Insufficiency of Service of Process and (3) Failure to join a party under Rule 19. *See* DE-20. On May 10, 2018, Magistrate Judge Steven Tiscione issued an Order requiring Plaintiff to submit its opposition to the Motion to Vacate by May 16, 2018 and for all parties to appear at an in person hearing on May 23, 2018 at 2:30 p.m.[10] As demonstrated below, Defendant's Motion to Vacate must be denied.

<u>ARGUMENT</u>

**I. <u>THE GOVERNING STANDARDS.</u>**

"The Clerk of Court's entry of default cuts off a defendant's right to appear in an action." *Transamerica Life Ins. Co. v. Shubin*, 1:11-cv-01958-LJO-SKO, 2012 U.S. Dist. LEXIS 157131, (E.D. Cal.  Oct. 31, 2012) (*citing Clifton v. Tomb*, 21 F.2d 893, 897 (4th Cir.1927)).  *See also Innovative Sports Mgmt., Inc. v. Redzic*, 2013 U.S. Dist. LEXIS 125358 (D. Az. Sept. 3, 2013) ("An entry of default cuts off a defendant's right to appear in an action or present evidence . . . . However, a defendant may file a motion to set aside the default."); *Hartford Fire Ins. Co. v. Sunteck Transp. Group, Inc.*, ACTION NO. 2:10cv191, 2011 U.S. Dist. LEXIS 78137 (E.D. Va. June 29, 2011) (same); *Great Am. Ins. Co. v. M.J. Menefee Constr., Inc.*, No. CV F06-0392 AWI DLB, 2006 U.S. Dist. LEXIS 64902, 6-7 (E.D. Cal. Aug. 29, 2006) (same); *Cohen v. Murphy*, C 03-05793 HRL,

---

[9] On April 30, 2018, after the Default had been entered by the Clerk against them, Deafueh filed his motion to dismiss the Complaint as against him ("Motion to Dismiss") based upon the following arguments: (1) Lack of Personal Jurisdiction and (2) Insufficiency of Service of Process and (3) Failure to join a party under Rule 19 and (4) Improper Venue pursuant to Federal Rules of Civil Procedures 12(b)(2), 12(b)(5), 12(b)(7) and 12(b)(3). Dkt. No. 19.  Defendant Taje Monbo failed to join in either of Deafueh's ' motions to vacate the Clerk's entry of default against him or the motion to dismiss.  Thus, he remains bound by the Clerk's entry of Default.

[10] In accordance with that Order, on May 10, 2018, Robert Meloni served a copy of that order by email transmission to deemonbo@yahoo.com and by Certified Mail, Return Receipt Requested, at P.O. Box 135, Owings Mills, Maryland 21117. He filed a Certificate of Service for same that day. *See* DE-21.

2004 U.S. Dist. LEXIS 25284, *1-2 (N.D. Cal. 2004) (same); *Newhouse v. Probert*, 608 F. Supp. 978, 985 (D.C. Mich. 1985) (same); *In re Uranium Antitrust Litigation*, 473 F. Supp. 382, 386 (D.C. Ill.1979) (same).

Thus, "[a] defendant's remedy if a defendant wants to set aside default . . . is for the defendant to file a motion to set aside entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure." *Great Am. Ins. Co.*, 2006 U.S. Dist. LEXIS 64902, at *7.

Here, the Clerk's Certificate of Default against Defendants was entered before Defendant Deafueh Monbo filed his Motion to Dismiss, which was, in turn, filed before his Motion to Vacate. *Compare*, DE-18, DE-19 and DE-20. Thus, this Court must resolve Defendant's Motion to Vacate the Clerk's entry of default in Defendant's favor before it can even consider his improperly filed Motion to Dismiss, which Plaintiff contends is a legal nullity.

## II.   MOTION TO SET ASIDE THE DEFAULT.[11]

Fed. R. Civ. P. 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).   Once a default has entered, the defendant may seek to set aside the default, pursuant to Fed. R. Civ. P. 55(c). *Brown v. Gabbidon*, No. 06 CV 8148, 2007 U.S. Dist. LEXIS 35134, *7 (S.D.N.Y. May 14, 2007). At such a hearing, the burden of proof is shifted from the Plaintiff to the Defendant. *Id.*

The factors that are considered by the court in determining whether to set aside a default or a default judgment are the same. *See United States v. Bullen*, No. 97 CV 7322, 1999 U.S. Dist. LEXIS 24015, *3 (E.D.N.Y. Mar, 1, 1999).   Under Rule 55(c), a court may set aside an entry of

---

[11] Defendant's Motion to Vacate appeared to submit what must be considered his Notice of Motion (Dkt. No. 20) and what must be his referred to "Statement of Points and Authorities" (Dkt. No. 20-1). However, the only document that comes close to a declaration of facts is part and parcel of his improper Motion to Dismiss (Dkt. No. 19). Thus, to the extent Plaintiff seeks to establish Defendant's assertion of fact on the Motion to Vacate (Dkt. No. 20), it may require citation to Defendant's Motion to Dismiss. (DE- 19)

default "for good cause." *Weifang Xinli Plastic Prods. Co. v. JBM Trading Inc.*, 11 CV 2710 (WFK)(LB), 2014 U.S. Dist. LEXIS 119391 (E.D.N.Y. May 2, 2014) (quoting Fed. R. Civ. P. 55(c)).  In determining whether good cause exists to set aside an entry of default, courts should consider: "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted."  *Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 171 (2d Cir. 2001). "None of these factors is determinative; each is to be weighed and balanced with the others." *Staples, Inc. v. W.J.R. Assocs.*, 04 CV 0904 (SJ), 2005 U.S. Dist. LEXIS 7219, *7 (E.D.N.Y. Apr. 7, 2005).  As demonstrated below, the balance weighs heavily in favor of Plaintiff.

### A.  <u>Defendant's Conduct Was Willful.</u>

In the Second Circuit, "willfulness" in the context of a default refers to conduct that is more than merely negligent or careless. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Where a litigant's conduct is egregious, "the court may find a default to have been willful where the conduct . . . was not satisfactorily explained." *Id.*  Thus, "[a] default is deemed willful where a defendant simply ignores the complaint without action."   *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs. - Charco Redondo Butane*, 755 F. Supp. 1195, 1205 (S.D.N.Y. 1989).

In Defendant Deafueh Monbo's case, the record could not be more clear that he not only ignored the Complaint, but once he admittedly received notice of this action pending against him, he chose instead, through his d/b/a's Twitter account, to openly mock Plaintiff, the action, and by extension, the Court and the judicial process.  DE-11-1, ¶¶11-20, Exs. E-H. ("YEAH YEAH, THROW YOUR LAWSUIT ON THE GRASS AND LEAVE IT THERE").  This is textbook willfulness.

**B.   There Are No Meritorious Defenses.**

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty*, 137 F.3d at 740 (citation and internal quotation marks omitted).  However, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2d Cir. 1993*)*. "Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 167 (2d Cir. 2004) (*citing Enron Oil Com. v. Diakuhara*, 10 F.3d at 98).  Defendant's motion fails miserably.

Defendant's purported defenses to Plaintiff's entry of default are that: (1) he was not properly served with process; (2) he is not subject to the personal jurisdiction of the Court,; and (3) Plaintiff has failed to join a company called "12 O'Clock Boyz Sports, Inc."   *See* DE-20.  As demonstrated below, they are at most, conclusory, and certainly not meritorious.

**(1) DEFENDANTS WERE PROPERLY SERVED.**

**(a) Defendant Maintains the Burden of Establishing Insufficient Service.**

On a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur. *See CSC Holdings, Inc. v. Fung*, 349 F. Supp. 2d 613, 616 (E.D.N.Y. 2004) ("A defendant with notice of the proceedings bears the burden of establishing the claim that service was not properly effected.*"); Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 677 (S.D.N.Y. 2003) (same); *Velez*

*v. Vassallo*, 203 F. Supp. 2d 312, 324-25 & n.10 (S.D.N.Y. 2002) (same). Here, the record shows

that Defendant had actual notice of the original proceeding no later than January 29, 2018, when he

first chose to mock Plaintiff and the Court on the 12 O'Clock Boyz Twitter Account rather than

properly filing an Answer or other responsive pleading.   Dkt. No 11-1, ¶¶11-20, Exs. E-H.

Moreover, Plaintiff has established that it properly served Defendants according to this Court's

order.  DE-15.

    **(b) <u>Defendant Cannot Establish Insufficient Service</u>**.

    Defendant's arguments on this point are woefully inadequate.  Most importantly, Defendant

ignores the fact that Plaintiff served Defendants as proscribed by this Court's March 13, 2018 Order

as follows:  (1) by email at Deafueh Monbo's email address as he listed it in all of his takedown

notices: "<u>deemonbo@yahoo.com</u>"; (2) by regular first class mail at the Post Office box number he

listed in all of his takedown notices: "P.O. Box 135 Owings Mills, Maryland 21117"; (3)   by

uploading copies of the pleadings to the Defendants'  Twitter account: "Real 12 O'Clock Boyz:

@12OClockBoyz" and (4) by mailing copies of the pleadings by first class mail to Defendants' last

known residential and business addresses, including, without limitation, to Defendant Deafueh

Monbo's business address, the accounting office where he works as a CPA: c/o WP Tax Group,

10451 Mill Run Circle, Suite 400,  Owings Mills, MD 21117.  DE-15.   Defendant Deafueh Monbo

never once claimed that: (a) his personal and business email is not <u>deemonbo@yahoo.com</u>, (b) that

he did not maintain the P.O. Box 135, (c) that he did not work as an accountant at WP Tax Group,

or (d) that he did not receive the documents delivered to the aforementioned addresses.  *See* DE- 20,

*passim*.  Indeed, he expressly concedes that the pleadings were delivered to "10451 Mill Run Circle,

Suite 400, Owings Mills, MD 21117."  *Id.*, p. 8.  Defendant's legal arguments are inapplicable and

his factual distinctions are irrelevant. He has not carried his burden on the issue of improper service of process.

### (2) Personal Jurisdiction.

### (a) Defendant Must Establish Lack of Personal Jurisdiction.

On a motion to vacate a default, Defendant bears the burden of establishing that the Court has no personal jurisdiction. *Yan v. Bocar*, 04 Civ. 4194 (LAK) (HBP), 2005 U.S. Dist. LEXIS 28390 *8-9 (S.D.N.Y. Sept. 8, 2005) ("when, as in this case, the validity of personal jurisdiction or service of process is raised in a motion to set aside a default, the movant bears burden of proof.").[12] Defendant Deafueh Monbo cannot establish a lack of personal jurisdiction based solely upon his conclusory statements that neither he nor his brother, Taje, transact business in New York State. *See* DE-19 and DE-20, given the record in this case.

### (b) The Court Only Requires a *Prima Facie* Showing of Personal Jurisdiction.

However, even if this Court were to shift the burden to Plaintiff to establish personal jurisdiction over Defendants, Plaintiff's burden is subject to a "'sliding scale'" that "'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84 (2d Cir. 2013) (*quoting Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Thus, where, as here, the case is in the pre-discovery stage and the court "relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). *See also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) ("In the

---

[12] *See also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005); *Sartor v. Utica Taxi Center, Inc.,* 260 F. Supp.2d 670, 677 (S.D.N.Y. 2003); *Velez v. Vassallo,* 203 F. Supp.2d 312, 324 (S.D.N.Y. 2002); *Rohm & Haas Co. v. Aries*, 103 F.R.D. 541, 543-44 (S.D.N.Y. 1984).

absence of an evidentiary hearing, the plaintiff's 'prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.'").

A *prima facie* showing of personal jurisdiction may be established at the motion to dismiss stage by "legally sufficient allegations of jurisdiction". *Penguin Grp. (USA), Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir.), *certified question accepted*, 15 N.Y.3d 744, 933 N.E.2d 205, 906 N.Y.S.2d 807 (N.Y. 2010), *and certified question answered*, 16 N.Y.3d 295, 946 N.E.2d 159, 921 N.Y.S.2d 171 (2011). Those allegations may be drawn from the pleadings and from Plaintiff's "own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (*quoting Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 208 (2d Cir. 2001)).

Under this generous standard, the Court must provisionally credit Plaintiff's well-pleaded factual allegations concerning jurisdiction even where those allegations are controverted by Defendant's sworn affidavits. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 86 (2d Cir. 2013). See *also Jarolim v. Akris Inc.*, 14 Civ. 3361 (AT), 2015 U.S. Dist. LEXIS 136400, *6 (S.D.N.Y. Sept. 9, 2015) ("[u]ntil an evidentiary hearing is held . . . the   plaintiff need make only a prima facie showing that jurisdiction exists, and this remains true notwithstanding a controverting presentation by the moving party") (internal citations omitted). Thus, at this stage, "a court must construe the pleadings and affidavits 'in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor.'" U.*S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 527 (S.D.N.Y. 2014) (*quoting Banker v. Esperanza Health Sys., Ltd.*, 201 F. App'x 13, 15 (2d Cir. 2006)).

**(c) <u>The Court Has Personal Jurisdiction Over Defendants</u>**.

A personal jurisdiction dispute requires a two-part analysis. The court must first determine whether there is a statutory basis for exercising personal jurisdiction, and then decide "whether the exercise of personal jurisdiction . . . comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).

In the first part of the analysis, the court "applies the forum state's personal jurisdiction rules," unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). *See also Coll. Essay Optimizer, LLC v. Edswell,* Inc., 2015 U.S. Dist. LEXIS 133488, 2015 WL 572968 ,*7-8 (S.D.N.Y. Sept. 30, 2015) ("In litigation arising under a federal statute that does not contain its own jurisdictional provision . . . a federal court sitting in New York has personal jurisdiction over a defendant if (1) New York law confers jurisdiction over that defendant, and (2) the assertion of personal jurisdiction under New York law would comport with due process."). Given that the Copyright Actor Lanham Act do not provide for nationwide service, the analysis must be governed by New York law.

In the second part of the analysis, the court must apply constitutional due process standards. Under the Due Process Clause, a state may "'authorize its courts to exercise personal jurisdiction over an out-of-state defendant'' only if "'the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)) (alteration in original) (internal quotations omitted).

(i)  **The Court has Specific Jurisdiction under CPLR 302(a)(3)(ii).**

It has long been observed that technological advances affecting the nature of commerce require the doctrine of personal jurisdiction to adapt and evolve along with those advances. *See Hanson v. Denckla*, 357 U.S. 235, 250-52, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958) ("As technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase.").  The guiding principle which has emerged from the case law is that whether the exercise of personal jurisdiction is permissible is "'directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet'". *K.C.P.L., Inc. v. Nash,* No. 98 Civ. 3773, 1998 WL 823657, *5 (S.D.N.Y. 1998) (*quoting Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124-25 (W.D. Pa. 1997)).  Here, Defendants have mastered technology and continuously conducted commercial activity in improperly asserting and protecting their purported rights in the 12 O'CLOCK BOYZ trademark and Home Video copyright over the internet *via* their email and Twitter accounts and in doing so have placed themselves squarely within the personal jurisdiction of this Court.

New York State's Long arm statute provides in relevant part:

§ 302. Personal jurisdiction by acts of non-domiciliaries.

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
* * * *
3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
* * * *
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

Plaintiff has established, at least on a *prima facie* level, that there is personal jurisdiction over Defendants pursuant to CPLR §302(a)(3)(ii) which Courts have determined requires that:

(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302, 946 N.E.2d 159, 921 N.Y.S.2d 171 (2011).

Under CPLR 302(a)(3), a non-domiciliary like Defendant who "commits a tortious act without the state causing injury within the state" may be brought before a New York court to answer for his conduct if he has had sufficient economic contact with the State *or an active interest in interstate or international commerce coupled with a reasonable expectation that the tortious conduct in question could have consequences within the State*." *McGowan v. Smith*, 52 N.Y.2d 268, 274, 437 N.Y.S. 2d 643 (1981) (italics added).

"To satisfy the first element, the plaintiff 'need not actually prove that defendant committed a tort but rather need only state a colorable cause of action". *Sole Resort, S.A. de C.V. v Allure Resorts Mgt., LLC*, 450 F3d 100, 106 (2d Cir 2006) (*quoting Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez*, 305 F3d 120, 125 (2d Cir 2002)).[13] Here Plaintiff has alleged that Defendants have improperly asserted that Plaintiff's film, *12 O'Clock Boys*, has infringed Defendants' purported trademark and copyrights in a videocassette entitled "12 O'Clock Boyz" and that Defendants threats to Plaintiff's Licensees, in New York, and to others nationally and internationally, has resulted in economic damage to Plaintiff from the removal of its film from distribution by some of those distributors and the invocation of Plaintiff's indemnification obligation on their behalf.  DE-1, ¶¶52-53.

---

[13] New York allows considerable freedom in defining what is tortious under CPLR 302 (a)(3). *See Ehrenfeld v. Mahfouz*, 489 F.3d 542 (2d Cir. 2007); *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 330 (E.D.N.Y. 2007).

New York courts apply the situs-of-the-injury test to determine whether the tortious act caused injury in New York. *See Oddo Asset Mgt. v Barclays Bank PLC*, 36 Misc.3d 1205[A], 954 N.Y.S.2d 760, 2010 NY Slip Op 52449[U] (Sup. Ct. N.Y. Co. Apr. 21, 2010) ("When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss") (*quoting Proforma Partners v Skadden Arps Slate Meagher & Flom*, 280 A.D.2d 303, 720 N.Y.S.2d 139 (1st Dep't 2001).   Here, as a New York based company, Plaintiff experienced the negative economic impact of the loss of distribution in New York.   *See* Sladek Dec., ¶12.

Plaintiff alleges that Defendants sent numerous and improper takedown notices to Plaintiff's distributors and licenses during November and December 2017.  DE-1, ¶¶47-48.  Included, among those Notices, was the November 19, 2017 Notice sent to VHX Corporation alleging, *inter alia*, that:

> "Taje Monbo and Deafueh Monbo d/b/a 12 O'Clock Boyz own the trademarks in the motion picture and brand name entitled 12 O'CLOCK BOYZ."

*See* Meloni Dec, ¶¶8-11 and Ex. A.

A few paragraphs later Defendants asserted: "The 12 O'CLOCK BOYZ brand has been in existence as early as 2001 and has been both a worldwide pioneer and leader in the field of urban dirt-bike riding." *Id*., Ex. A (bold in original).

After explaining their awareness that Plaintiff is the distributor of the film entitled "12 O'Clock Boys" Defendants further assert "12 O'Clock Boyz further understand that the trademark infringing film is being offered for sale on the VHX.TV website." *Id*.  Defendants then continued: **This letter constitutes 12 O'Clock Boyz demand that VHX.TV remove any, and all infringing content bearing the 12 O'CLOCK BOYZ mark from the VHX.TV website.** *Id.* (bold in original).

23

On December 13, 2017, Defendants then sent a letter responding to VHX's opposition to their November 19, 22 and 29 infringement notices, in which Defendants threatened VHX Corporation in New York as follows:

> 12 O'Clock Boyz can sue **both** VHX Corporation along with Oscilloscope for copyright infringement in the U.S. Federal Court.  The remedies available to 12 O'Clock Boyz for these copyright infringements **include actual damages and any additional profits made by VHX Corporation or statutory damages up to $150,000 as well as injunctive relief, attorneys' fees and costs."**

*See* Meloni Dec., Ex. D. (bold in original).[14]    As a result of Defendants' multiple improper and tortious threats against VHX Corporation in New York, VHX invoked Plaintiff's obligation to indemnify VHX for any damages, including legal fees, which arose as a result of Defendants' claims raised in those letters.  *See* Sladek Dec., ¶¶8, 10-13.  Similarly, Defendants improper threats against another New York based distributor, InDemand, led InDemand to also invoke Plaintiff's obligation to indemnify it against Defendants' improper claims.  *Id.,* ¶10.  Finally, numerous other distributors invoked their indemnification rights as against Plaintiff as well.  *Id.,* ¶11

The Defendants' blunderbuss challenges to Plaintiff's exclusive rights to distribute the documentary film *12 O'Clock Boys* not only resulted in the loss of income from the removal of the film by some of the distributors and the imposition of indemnification obligations by others, but it also damaged Plaintiff's reputation in the film industry by creating a cloud over Plaintiff's title to the film and the reliability of its contractual commitments.  *Id*. ¶12.  The impact of Defendants conduct was felt by Plaintiff at its offices in New York.  *Id*. ¶¶8, 11-13.

Moreover, Defendants were fully aware that by sending out the improper threatening letters to Plaintiff's distributors, they would be negatively impacting Plaintiff.  As a result, it was

---

[14] Defendants' threat of a lawsuit against VHX and Plaintiff could only have been carried out in New York federal court, given that the purportedly infringing material allegedly appeared on the "VHX.TX website" in New York.  "Where an internet site displays allegedly infringing marks, the tort is deemed to be committed where the website is created and/or maintained." *Chatwal Hotels & Resorts LLC v. Dollywood Co*., 90 F. Supp. 3d 97, 106 (S.D.N.Y. 2015) (*quoting Starmedia Network, Inc. v. Star Media, Inc.*, No. 00 Civ. 4647, 2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. Apr. 23, 2001)).

24

completely foreseeable that their conduct would have consequences in Plaintiff's New York office. See e.g., Meloni Dec. ¶21, Ex. D (VHX 12/13/2017 letter) ("12 O'Clock Boyz can sue both VHX Corporation along with Oscilloscope for copyright infringement in the U.S. Federal Court."); and DE-11-1, ¶20 and Ex. H ("Like Bey, the Official 12 O'ClockBoyz team slaps Partners and Sub-partners of @OscopeLabs in the United States, Australia, France and South Africa with Copyright Takedown Notices. . . ").

Finally, Plaintiff has alleged that Defendants have represented under oath that they have been exploiting their trademark and copyrights "in interstate commerce" since 2001. *See* DE-1, ¶43 ("When applying for the Trademark Registrations, Defendants represented, under oath pursuant to under 18 U.S.C. §1001, that they began using the Mark "12 O'CLOCK BOYZ" in interstate commerce as of June 25, 2001 in three classes of goods/services (Classes 9, 25 and 41), including through the sale of the Home Video.") and Meloni Dec., ¶12, Ex. A (11/19/2017 VHX Letter) (" The 12 O'CLOCK BOYZ brand has been in existence as early as 2001 and has been both a worldwide pioneer and leader in the field of urban dirt-bike riding.").  Based upon those admissions by Defendants, Plaintiff submits that it has made a *prima facie* showing that Defendants derive substantial revenue from interstate or international commerce, thus satisfying the last requirement of CPLR 302(a)(3)(ii).[15]

---

[15] At a minimum, given Defendants' assertions of a 17 year commercial exploitation of their intellectual property rights in interstate commerce, Plaintiff has established the right to seek discovery on this issue.  Where a plaintiff is trying to establish jurisdiction pursuant to CPLR 302, the New York Court of Appeals has held that: "The practice under CPLR 3211 (subd. [d]) protects the party to whom essential jurisdictional facts are not presently known, especially where those facts are within the exclusive control of the moving party. The opposing party need only demonstrate that facts "may exist" whereby to defeat the motion. It need not be demonstrated that they do exist. This obviously must await discovery." *Peterson v. Spartan Industries, Inc.*, 33 N.Y.2d 463, 466, 354 N.Y.S.2d 905 (1974). *See also A-1 v. VA. Mesa, Inc.*, 191 A.D.2d 377, 595 N.Y.S.2d 212 (1st Dept. 1993) (In opposing a motion to dismiss "on the ground that discovery on the issue of personal jurisdiction is necessary, plaintiffs need not make a prima facie showing of jurisdiction, but instead must only set forth, a sufficient start, and show[ ] their position not to be frivolous".)  In the alternative, should this Court determine that Plaintiff has failed to make the prima facie showing of personal jurisdiction, then in the interest of justice, it should transfer the action to the federal district court for the District of Maryland.  *See Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, 05 Civ 6893 (MBM), 2006 U.S. Dist. LEXIS 25880 *26-27 (S.D.N.Y. May 2, 2006)(" a court may transfer an action commenced in a district in which personal jurisdiction over the

### (ii) **There are No Due Process Concerns.**

The Due Process test has come to rest on whether a defendant's "conduct and connection with the forum State" are such that it "should reasonably anticipate being haled into court there". *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 216, 713 N.Y.S.2d 304, 308 (2000).   Thus, a defendant "who purposefully has directed [its] activities at forum residents … must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable".  *Id.*, 95 N.Y.2d at 216 (internal quotations omitted).   "[A]s a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co*., CV-08-384, 2009 U.S. Dist. LEXIS 13369, *37 (E.D.N.Y. Feb. 17, 2009) (*quoting Energy Brands, Inc. v. Spiritual Brands, Inc.,* 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008)).  Defendants have purposely directed their tortious activities at Plaintiff, a New York Corporation, and at both VHX Corporation and InDemand LLC, both located in New York. As a result of Defendants' repeated interference with Plaintiff's and its distributors' film exploitation rights in New York, Defendant cannot plausibly argue that he could not anticipate being haled before this Court.   Due process has been satisfied.

### (3) **Failure to Join 12 O'Clock Boyz Sports, Inc.**

Defendant argues that non-party 12 O'Clock Boyz Sport, Inc. must be joined as an indispensable party pursuant to Fed. R. Civ. P. 19.  *See* DE-20-1, p. 10; DE-19, pp. 2-3*.*

First and foremost, Defendant does nothing more than state in a conclusory fashion that "[t]he Maryland corporation, 12 O'Clock Boyz Sports, Inc. has been using the "12 O'Clock Boyz" mark for the past years and has an interest in the "12 O'Clock Boyz" mark.  *See* DE-19, p. 3.   On

---

defendant is lacking to another district in which the action could have been brought, if the transfer would promote the interest of justice.")

its face, this is totally insufficient.  *See Traflex International, Inc. v. Jasmin, Ltd.*, No. 88 Civ. 3557 (JFK), 1989 U.S. Dist. LEXIS 6784, *9 (S.D.N.Y June 19, 1989) ("Jasmin has failed to demonstrate how STEPS falls within any of the above-detailed categories. [and] makes only the most conclusory allegations that STEPS is an indispensable party to this action.").

Moreover, in all of Defendants' takedown notices and other correspondence with Plaintiff's distributors and/or licensees, including those in New York, Defendant has consistently represented that Defendants Taje Monbo and Deafueh Monbo d/b/a 12 O'Clock Boyz own the copyrights and trademarks in the purportedly infringed videocassette, mark and brand name 12 O'CLOCK BOYZ.

For example, in Defendants' original notice of copyright infringement sent to Google, Defendant Deafueh stated: "Taje Monbo and Deafueh Monbo d/b/a 12 O'Clock Boyz own the copyright and trademarks in the motion picture and brand name entitled 12 O'CLOCK BOYZ.  The film, 12 O'Clock Boyz was registered in the U.S. Copyright Office on August 24, 2001 (Reg. No. PAu 002610236)."  *See* Meloni Dec., ¶8, <u>Ex. A</u> (Email from John Langan of Google/YouTube dated December 7, 2017).

Similarly, on November 19, 2017, Defendants sent VHX a letter claiming that VHX, *inter alia*, infringed Defendants' trademark in the 12 O'Clock Boyz mark.  That letter opened with the statement "Taje Monbo and Deafueh Monbo d/b/a/ 12 O'Clock Boyz own the trademarks in the motion picture and brand name entitled 12 O'CLOCK BOYZ.  See Exhibit 1 for the trademark registrations."  *See* Meloni Dec., ¶10.  The referenced "Exhibit 1" of that letter are three separate screenshots of the Trademark Electronic Search System (TESS) that shows three versions of the 12 O'Clock Boyz mark, and in each instance lists the Owner as "(REGISTRANT) Monbo, Deafueh INDIVIDUAL UNITED STATES PO Box 135 Owings Mills Maryland 21117" and "(REGISTRANT) Monbo, Taje INDIVIDUAL UNITED STATES PO Box 135 Owing Mills

27

Maryland 21117".  *Id*, ¶11, <u>Ex. A</u>.  On page 2 of the November 19, 2017 letter Deafueh Monbo has provided his sworn affidavit that states that his d/b/a "12 O'Clock Boyz has registered the 12 O'CLOCK BOYZ mark in the United States Patent & Trademark Office (USPTO) as Registration No. 4991835, Registration No. 5021939, and Registration No. 4991753."  Deafueh Monbo also swears "[u]nder penalty of perjury, the above information in this Notice is true and accurate and that I am the trademark owner or intellectual property owner or authorized to act on the intellectual property owner's behalf."  *Id.*

Finally, as another example of an earlier conflicting representation made under oath, in Defendants' December 17, 2017 Notice under the DMCA to one of Plaintiff's other distributors, "Our Film Festival d/b/a Fandor", Defendant Deafueh Monbo asserts that "Taj Monbo and Danielle Avent d/b/a 12 O'Clock Boyz own the copyright in the film entitled 12 O'Clock Boyz.  12 O'Clock Boyz has registered its copyright on August 24, 2001 (Registration No. Pau-002610236).  *See* Exhibit 1 for the Copyright Registration."  *See* Meloni Dec., <u>Ex. A</u> (Fandor Notice).  Attached as <u>Exhibit 1</u> to that DMCA Notice is a screenshot of the Copyright Office Public Catalogue, which list as the Copyright Claimants for the "12 O'Clock Boyz" Videocassette as being Taje Monbo and Danielle Avent, with Taje Monbo as the Author on the Copyright Registration.  *Id*.; see also Meloni Dec. ¶24 & <u>Ex. F</u>.  In the accompanying Affidavit that immediately follows on page 3 of the DMCA Notice, Deafueh Monbo states "[u]nder penalty of perjury, the above information in this Notice is true and accurate and that I am the copyright owner or trademark owner or intellectual property owner or authorized to act on the intellectual property owner's behalf".  *Id.* [16]

---

[16] Deafueh's sworn statements reveal a penchant for playing fast and loose with the truth. For example, the copyright registration summary for Registration No. Pau-002610236 (<u>Ex. F</u>) indicates that the registered work entitled 12 O'CLOCK BOYZ was still an *unpublished work* ("PAu") as of August 24, 2001, indicating that it was not yet released and or made available to the public. Although Deafueh represented to the Copyright Office that the video was unpublished as of August 24, 2001 when he filed his application, in his trademark application filed on January 1, 2016 relating to the use of that title for the same movie in Class 9 [TM Reg. No. 4991835], he represented under oath to the Trademark Office that the same work was *published* on June 25, 2001, two months <u>prior</u> to the date he filed his

Nowhere before appearing in Defendant's Motions, does Defendant ever represent that 12 O'Clock Boyz Sports, Inc. has any interest in the intellectual property at issue in this action.  See DE-19, DE-20 and DE-20-1, *passim*.   Thus, to the extent that Defendant's representations of fact in his moving papers conflict with his identified prior sworn statements in his notices to VHX and others, they have to be disregarded. *See Clarke v. County of Broome*, 1:10-CV-399 (MAD/ATB), 2012 U.S. Dist. LEXIS 40318, * 15 (N.D.N.Y. March 23, 2012) (*citing Mulhern v. Eastman Kodak Co.,* 191 F.Supp.2d 326 (W.D.N.Y. 2002)).[17]

Given Defendants admission of their respective individual ownership of the intellectual property at issue here, the trademarks in the 12 O'Clock Boyz mark and the copyright in the 12 O'Clock Boyz video, the only parties necessary and indispensable to the full resolution of this matter are the two Defendants, Deafueh and Taje Monbo. They are both properly before this Court. The corporation 12 O'Clock Boyz Sports, Inc. has no skin in the game, will suffer no detriment if it is not joined, and thus is neither necessary nor indispensable for a complete resolution of this action as between the existing proper parties.

---

copyright application.  *See* Meloni Dec., Exhibit I.  Either one or the other representation was false, in violation of 18 U.S.C. §1001.

[17] Indeed, Defendant Deafueh's blatant misrepresentation on his Motion to Vacate calls for the application of the "sham issue of fact doctrine".  *See Secrest v. Merck, Sharp & Dohme Corp. (In re Fosamax Prods. Liab. Litig.)*, 707 F.3d 189, 193 (2d Cir. 2013)  ("Instead, we hold that the District Court was entitled to disregard Dr. Epstein's new testimony relating to his knowledge based on the "sham issue of fact" doctrine, which prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony.").  While not directly applicable to Defendant's Motions, as it is usually applied on a motion for summary judgment, at least one Court has relied upon its principals at the motion to dismiss stage.  *See Egleston v. Valspar Corp.*, 15cv4130 (DLC), 2015 U.S. Dist. LEXIS 146284, *19 n.6 (S.D.N.Y. Oct. 13, 2015) ("While the "sham issue of fact" doctrine – which "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony," *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (citation omitted) – does not apply here, it does help to illustrate that this is not a genuinely disputable issue of material fact. The Complaint contained an admission contradicted by plaintiff's later affidavit; when the initial admission is corroborated by uncontested direct evidence, the Court is under these circumstances entitled to credit the fact admitted.").  Here, Defendant's representation that 12 O'Clock Boyz Sports, Inc. is an indispensable party under Fed. R. Civ. P 19 is a sham issue of fact that is contradicted by his earlier sworn statements, which is itself corroborated by the uncontested direct evidence appearing in, and as an exhibit to, his November 19, 2017 letter to VHX Corporation and his December 17, 2017 letter to Fandom.  As a result, it cannot support either of Defendant's Motions.

C. **Prejudice**.

In considering whether to grant a motion to vacate a default, the Court must also consider any possible prejudice to the plaintiff. *See Brown v. Gabbidon*. 2007 U.S. Dist. LEXIS 35134, at *11.  Generally, delay alone is not enough to establish prejudice in the absence of a showing that the delay has resulted in the loss of evidence or will create difficulties in discovery. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d at 98.   However, where, as here, "a defendant's default was willful and the defendant has no meritorious defense, an absence of prejudice to the plaintiff will not entitle the defendant to relief from a default judgment." *RLS Associates. LLC. v. United Bank of Kuwait PLC*, No. 01 CIV 1290, 2002 U.S. Dist. LEXIS 1371, 2002 WL 122927, at *3 (S.D.N.Y. Jan. 29, 2002) (*citing SEC v. McNulty,* 137 F.3d at 738).

Notwithstanding the above, Plaintiff will continue to suffer extreme prejudice to its bank account and its reputation in the film industry from the cloud Defendant Deafueh Monbo has placed on the title to its film 12 O'Clock Boys, which will only be allowed to continue unabated, should Defendant Deafueh Monbo be granted relief from his default.  *See Sladek* Dec., Ex. B.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Vacate in its entirety, together with such other relief as it deems just and proper.

Respectfully submitted,

MELONI & McCAFFREY

By: _____
      Robert S. Meloni
      Thomas P. McCaffrey
3 Columbus Circle, 15th Floor
New York, New York 10019

*Attorneys for Plaintiff*

30