UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Oscilloscope Pictures, Inc., | Case No.: 17 CV 07458(MKB) (ST) |
| Plaintiff, | |
| -against- | |
| Deafueh Monbo and Taje Monbo, both individually and doing business as 12 O'Clock Boyz, | |
| Defendants. | |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DEAFUEH
MONBO'S MOTION TO VACATE DEFAULT CLERK'S ENTRY OF DEFAULT**

ReadLaw, P.C.
Andrew S. Read, Esq. (AR 0451)
11 Broadway, Ste. 615
New York, New York 10004

*Attorneys for Defendant Deafueh
Monbo*

**Table of Contents**

Table of Authorities ............................................................................................iii

Preliminary Statement ........................................................................................1

Statement of Facts .............................................................................................1

Standard of Review ............................................................................................5

Argument .........................................................................................................6

       The Default Should be Vacated .....................................................................6

          Good Cause and Excusable Default .............................................................8

          Defendant Can Demonstrate Meritorious Defenses ...........................10

          Plaintiff Will Not be Prejudiced .............................................................12

Conclusion.......................................................................................................12

## Table of Authorities

**Cases**                                                                                    **Pages**

*Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d
873, 879 (7th Cir.1988) ..............................................................................................10

*Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.1975) ...........................................7

*Bricklayers & Allied Craftworkers v. Moulton Masonry & Const., LLC*, 779 F.3d 182,
186 (2d Cir. 2015)........................................................................................................8

*Brown v. Baldwin Square LLC*, No. 14-CV-0551, 2015 WL 1014398, (E.D.N.Y.
Mar. 9, 2015) ................................................................................................................9

*Davis v. Musler*, 713 F.2d 907, 912 (2d Cir.1983) ......................................................12

*De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) .......................................8

*E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527-28 (11th Cir.1990)...7

*Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir. 1957) ....................................................6, 13

*Keegel v. Key West & Caribbean Trading Co., supra*, 627 F.2d at 373 ........................6

*Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) .............6

*McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) ..............5

*Mun. Credit Union v. Queens Auto Mall, Inc.*, No. 14-CV-4895, 2014 WL 6870960,
at *1 (E.D.N.Y. Dec. 5, 2014)......................................................................................8

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001) ........................5

*Pennacchio v. Powers, No.* 05-CV-985, 2010 WL 3767141, at *3 (E.D.N.Y. Aug. 9,
2010) .............................................................................................................................8

*Peterson v. Term Taxi Inc.*, 429 F.2d 888, 890-92 (2d Cir. 1970)..............................12

*SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) ...............6, 13

*SEC v. Vogel*, 49 F.R.D. 297, 299 (S.D.N.Y.1969)........................................................6

*Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 614 (2d Cir. 1964) ...................12

*Williams v. Ward*, 556 F.2d 1143, 1149 (2d Cir. 1977) .................................................6

**Statutes**

Fed R. Civ. P. §55 ...........................................................................................9, 10, 11

Fed R. Civ. P. §60 ...........................................................................................10

**Other Authorities**

10A Charles A. Wright, et al., Fed. Practice & Procedure: Civil § 2699, at 169 (3d ed.1998) ...........................................................................................................12

<u>PRELIMINARY STATEMENT</u>

This supplemental memorandum of law is submitted on behalf of Defendant Deafueh Monbo, in support of her Emergency Motion to Vacate the Clerk's Entry of Default. It is submitted with leave of the Court following argument on Defendant's *pro se* motion to vacate which only set forth jurisdictional arguments, and is made to address deficiencies regarding Defendants' meritorious defenses to the instant action.

It is respectfully submitted that the Clerk's Entry of Default should be vacated on various grounds. The Defendant had good cause for the delay in appearing and answering in this action, and possesses a number of meritorious defenses to Plaintiff's claims. Further, Plaintiff will suffer no prejudice if the Defendant is allowed to appear in and defend this action. The rights and ownership interests of the parties should be adjudicated on their merits.

<u>STATEMENT OF FACTS</u>

The Court is respectfully referred to the Defendant's *pro se* moving papers, and the Declarations of Deafueh Monbo and Taje Monbo, submitted herewith for a recitation of the relevant facts of this action.

In brief, the Defendants Deafueh and Taje Monbo are the owners and or authors of the following intellectual properties:

(i)    12 O'Clock Boyz - an independent documentary film released in 2001 under the following copyrights - PAu002610236, VA0001982689

    (ii)    12 O'Clock Boyz "The Paparazzi Edition" - an independent documentary film released in 2003 under the following copyrights - PAu003760848, VA0002062926

    (iii)    12 O'Clock Boyz - standard character mark - Serial No. 86777306, 86756470

    (iv)    12 O'Clock Boyz - design mark - Serial No. 86863708, 8731264

The 12 O'Clock Boyz are a group of motorcycle, ATV and dirt bike stunt performers located in the city of Baltimore Maryland. The first 12 O'Clock Boyz film was released in 2001 on VHS format and sold in the interstate area of Maryland, Washington DC and Virginia. These films were sold at bike shows, clothing and accessory stores, flea markets, college campuses, and many other locations.

These films and their respective marks are owned and authored by the Defendants and showcased the exploits of the 12 O'Clock Boyz. Upon information and belief, Defendants' films were the first independent films documenting the activities of the Baltimore stunt bike community and said films made both the 12 O'Clock Boyz name and brand recognizable as the apex of stunt bike riders in the Baltimore-Washington metropolitan area.

Defendants together with the members of the 12 O'Clock Boyz continued to build the brand and notoriety of the group, and are recognized as, arguably, the most influential urban stunt bike community in the North East.

Defendants' film and brand existed without issue until in or around 2013 when Defendants became aware of a film by non-party Lofty Nathan and his company Red Gap Films which utilized footage from the Defendants 12 O'Clock Boyz films. Mr. Nathan entitled this film 12 O'Clock Boys despite the fact that his film focused on other groups located in Baltimore, specifically, WOWBOYZ, Raise it Up, and upon information and belief, the Rough Riders.

Mr. Lofty and Plaintiff were advised that their 12 O'Clock Boys film, improperly utilized footage from Defendants films and compromised the 12 O'Clock Boyz brand, effectively making the distinct groups who ride in Baltimore into a single undefined mass.

There was no resolution regarding Plaintiff's infringing film and Defendant Taje Monbo authorized the issuance of DMCA takedown notices to enforce the Defendants' rights.

Plaintiff thereafter brought the instant action for declaratory judgment among other reliefs, seeking to adjudicate the respective rights of the parties herein.

Defendants, while aware that Plaintiff purportedly filed an action against them, were never personally served with the summons and complaint in this action and as such, erroneously believed that their time to respond to the action had not yet begun to run.

After conferring with local counsel in Maryland, Defendant proceeded to file a *pro se* motion to dismiss, arguing that Plaintiff lacked standing, failed to

effectuate service, and had failed to join necessary parties, along with a number of other jurisdictional claims [DE 19].

Unbeknownst to Defendant, this application was made 6 days after the Plaintiff's application for a certificate of default, and was received by the Court on the same date as the entry of default by the clerk [DE 18].

It is respectfully submitted that Defendant's motion to dismiss, in and of itself, indicates a clear intention to appear in and defend in the action.

Upon learning of the entry of default, Defendant brought the instant *pro se* motion to vacate the Clerk's entry of Default pursuant to Fed Rule Civ Pro 55(c), 60. Defendant thereafter retained this office as counsel less than one week prior to the hearing scheduled on said motion.

At the hearing it was made clear that the Defendant's *pro se* motion did not address the Defendant's meritorious defenses to the action and the Court, in its discretion, allowed for this office to file supplemental declarations to address the deficiencies of the *pro se* motion [DE 31].

Following the submission of the declarations of Defendants [DE 32, 33], Plaintiff sought leave of the court to file an oversized memorandum of law in response to the Declarations [DE 35].

Defendant thereafter sought leave to file this supplemental memorandum of law in support of Defendant's motion [DE 36].

## STANDARD OF REVIEW

Where the clerk has entered a default but there is no default judgment, the standards set forth in Fed. R. Civ. P. 55(c) govern rather than Fed. R. Civ. P. 60(b), which provides the standard for setting aside a default judgment. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). Rule 55(c) provides that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).

In determining whether good cause has been shown, courts consider "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *Brown v. Baldwin Square LLC*, No. 14-CV-0551, 2015 WL 1014398, at *2 (E.D.N.Y. Mar. 9, 2015) (same).

There is a "strong preference for resolving disputes on the merits," and the Second Circuit has explained that "a decision whether to set aside a default is a decision left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (internal quotation marks and citations omitted).

<u>**ARGUMENT**</u>

**<u>The Default Should be Vacated</u>**

Pursuant to FRCP Rule 55(c) (Rule 60 applies a similar standard and motions pursuant to Rule 60 are reviewed almost identically), the Court may set aside the Clerk's entry of Default for good cause shown.

Under Rule 55(c), the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. *Keegel v. Key West & Caribbean Trading Co., supra*, 627 F.2d at 373; *See Williams v. Ward*, 556 F.2d 1143, 1149 (2d Cir. 1977); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir. 1957); *SEC v. Vogel*, 49 F.R.D. 297, 299 (S.D.N.Y.1969).

Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits. *See Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949); *Gill v. Stolow, supra*; *SEC v. Vogel, supra*. The courts, generally, look upon the default procedure with disfavor because the interests of justice are best served by obtaining a decision on the merits.

The criteria for determining whether to set aside a default judgment or an entry of default are the same. However, the standards are applied more liberally to an entry of default. Therefore, commonly, relief from entry of default will be granted more readily and with lesser showing than in the case of default

judgment. *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527-28 (11th Cir.1990).

As stated previously, the Court may set aside the entry of default for a "good cause shown." Good cause is most often described as a mutable standard, varying from situation to situation and although it is not subject to a precise formula, some general guidelines are commonly applied.

In determining whether there is good cause to strike an entry of default, the Court considers:

1.  Whether the default was the result of the defendant's culpable conduct;

2.  Whether the defendant has a meritorious defense; and

3.  Whether the plaintiff will be prejudiced.

Determination of whether good cause exists to set aside an entry of default depends upon the Court's application of discretion with regard to the particular circumstances surrounding the case before it.

Generally, the rules relating to relief from default judgment are liberally construed to resolve doubts if any, in favor of setting aside default judgments so that cases may be decided on their merits.

It is respectfully submitted that the facts and circumstances surrounding this action fall within the Court's proper exercise of discretion and that the Clerk's entry of Default should be vacated.

**Good Cause and Excusable Default**

"`[T]he basic purpose of default judgment is to protect parties from undue delay-harassment.'" *Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir. 1975). Thus, [the court] has held that willfulness in the context of a judgment by default requires "something more than mere negligence," such as "egregious or deliberate conduct," although "the degree of negligence in precipitating a default is a relevant factor to be considered." Id. at 60, 61.

Similarly, in the context of an entry of a certificate of default, willfulness refers to "conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (internal quotation marks and citation omitted) (finding willfulness where "defendants failed to file a responsive pleading for over nine months after the receipt of the summons and complaint" despite awareness that the legal action was pending); *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329 (2d Cir. 1986) (upholding district court's refusal to vacate where motion to vacate entry of default was not made until seven months after default).

Of the criteria to be evaluated in the context of a default, "willfulness is preeminent, and a willful default will not normally be set aside." *Pennacchio v. Powers, No*. 05-CV-985, 2010 WL 3767141, at *3 (E.D.N.Y. Aug. 9, 2010) (internal quotation marks and citation omitted) report and recommendation adopted, 2010 WL 3744052, at *3 (E.D.N.Y. Sept. 20, 2010); *Mun. Credit Union v.*

*Queens Auto Mall, Inc.*, No. 14-CV-4895, 2014 WL 6870960, at *1 (E.D.N.Y. Dec. 5, 2014) ("Usually, the factor that carries the most weight is whether the default was willful." (citing *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013)).

It is respectfully submitted that Defendant Deafueh Monbo's default was not willful and that she had good cause with respect to her delay in appearing in the instant action.

The Defendant's default, in great part, stemmed from a lay person's understanding of the Court's service requirements. As set forth in Defendant's Supplemental Declaration, Defendant believed erroneously that her time to respond to Plaintiff's action would begin once personal service of the Complaint was effectuated on her.

It appeared to Defendant, that the Plaintiff was just sending papers wherever they chose as opposed to making any effort to legitimately effectuate service on her. Defendant, however was unaware that Plaintiff had received leave of the Court to effectuate service by alternative means [DE 13] and that what appeared to be service by convenience, was in fact legitimate service.

Despite the belief that service was ineffective, Defendant appeared by way of her *pro se* motion to dismiss, specifically citing the fact that she believed service was insufficient [DE 19 pp 10-11].  This motion was sent to the Court less than a week after Plaintiff's application for a certificate of default and the motion was received by the Court on the same day that the Clerk entered a default against Defendants.

While Plaintiff points to a brazen Twitter post made by the 12 O'Clock Boyz account as evidence of a willful default, Defendant has shown a clear intention to appear in and defend against Plaintiff's claims. Any willfulness perceived by Plaintiff is a result of what appeared to be the Plaintiff indicating that they could not only steal Defendants' work but also effectuate service in any manner they saw fit. A combative response from the Defendant does not indicate that Defendants willfully defaulted in the instant proceedings.

**Defendant Can Demonstrate Meritorious Defenses**

To satisfy the criterion of a "meritorious defense," the defense need not be ultimately persuasive at this stage. "A defense is meritorious if it is good at law so as to give the fact finder some determination to make." *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988).

As more expressively set forth in Defendant's Supplemental Declarations [DE 32, 33] The Defendants have clearly set forth meritorious defenses to the action.

In brief, Plaintiff's claims and rights spring forth from a purported license from a member of the 12 O'Clock Boyz, Defendants aver that said individual had no authority to grant a license to the Defendants' work and that by consequence thereof, Plaintiff has no enforceable rights regarding the intellectual properties at issue herein.

As far back as 2001 the Defendants have used the 12 O'Clock Boyz mark in commerce in connection with their copyrighted material. Additionally, the term 12 O'Clock Boyz identifies not only the riders of this group, but the creative works produced by the group. These uses began 12 years prior to the work distributed by Plaintiff and 8 years prior to Lofty Nathan's first copyright filing bearing the name The Twelve O'clock Boyz (PAu003430990).

The notoriety gained by the actions of the 12 O'Clock Boyz and the pervasiveness of the Defendants' 2001 film inspired many young riders to try to attempt to  earn a place within the group. Plaintiff's work improperly associates itself with a dedicated group of individuals and the brand that they have built up to identify themselves as the pinnacle of achievement in Baltimore stunt riding culture.

Defendants' works and the trademarks that stem from said works are sufficient to show that Defendants possess meritorious defenses to Plaintiff's claims. These issues should not be decided by a default as there are legitimate questions raised by the Defendants regarding the Lofty Nathan and Red Gap film as well as questions regarding Plaintiff's authority to enforce rights in the creative works.

It is clear that Defendants have meritorious defenses to Plaintiff's claims and the parties should have a full and fair opportunity to resolve the ownership interests and rights of the parties.

**Plaintiff Will Not be Prejudiced**

Some delay is inevitable when a motion to vacate a default judgment is granted; thus, "delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler,* 713 F.2d 907, 912 (2d Cir.1983). Something more is needed. For example, delay "may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." 10A Charles A. Wright, et al., Fed. Practice & Procedure: Civil § 2699, at 169 (3d ed.1998), cited in Davis, 713 F.2d at 916

It is respectfully submitted that vacating the default will not prejudice the Plaintiff. The Defendant's motion to vacate was made immediately after learning of the default and prior to this motion, Defendant had filed a motion to dismiss Plaintiff's complaint. There has been no exchange of discovery in the instant litigation and the parties have yet to confer regarding a possible resolution of the respective claims set forth. It is in the best interest the parties represented herein, as well as non-parties with cognizable rights, to have the concerns raised by Plaintiff and Defendant fully and fairly adjudicated.

Defendant should be afforded a meaningful opportunity to participate in and defend against the claims set forth by Plaintiff.

## CONCLUSION

While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort. *See, e. g., Peterson v. Term Taxi*

*Inc.*, 429 F.2d 888, 890-92 (2d Cir. 1970); *SEC v. Management Dynamics*, supra; *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 614 (2d Cir. 1964); *Gill v. Stolow, supra.*

In light of the foregoing, the current state of the action, Defendants' meritorious defenses, and the fact that a default judgment would produce a harsh and unfair result, Defendant's motion to set aside the Clerk's entry of Default should be granted in its entirety.

Dated: June 29, 2018
New York, New York

Respectfully submitted,

ReadLaw, P.C.
By: Andrew S. Read, Esq.
(AR 0451)
Attorneys for Defendants
11 Broadway, Suite 615
New York, New York 10004

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the service list below this 29th day of June, 2018.

Andrew S. Read

### SERVICE LIST

Robert S. Meloni
Thomas P. McCaffrey
MELONI & MCCAFFREY
3 Columbus Circle, 15th Floor
New York, New York 10019
rmeloni@m2lawgroup.com,
tmccaffery@m2lawgroup.com

*Attorneys for Plaintiff*